IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FADI AL-MAQALEH**, *et al.*,<br><br>Petitioners,<br><br>v.<br><br>**BARACK H. OBAMA**, *et al.*,<br><br>Respondents. | Civil Action No. 06-1669 (JDB) |
| **AMIN AL-BAKRI**, *et al.*,<br><br>Petitioners,<br><br>v.<br><br>**BARACK H. OBAMA**, *et al.*,<br><br>Respondents. | Civil Action No. 08-1307 (JDB) |
| **REDHA AL-NAJAR**, *et al.*,<br><br>Petitioners,<br><br>v.<br><br>**BARACK H. OBAMA**, *et al.*,<br><br>Respondents. | Civil Action No. 08-2143 (JDB) |

**PETITIONERS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR LEAVE TO FILE SUPPLEMENTAL MATERIALS**

Although one may not know it from Respondents' briefing, the test for determining habeas corpus jurisdiction is nuanced, multi-factored, and fact-intensive. *See, e.g.*, *Boumediene v. Bush*, 553 U.S. 723, 766-67 (2008). Respondents' arguments seem to rest on the assumption that no set of facts could ever give rise to jurisdiction over a Bagram detainee's habeas petition

under the Court of Appeals' analysis. However, Respondents' reading of the Circuit Court opinion is inconsistent with *Boumediene*. As the Court of Appeals pointed out at oral argument, if Respondents were correct that the Supreme Court in *Boumediene* meant to limit the rationale of its holding to Guantánamo, "it would have been a much shorter opinion and a lot easier to write." Tr. of Oral Arg. at 5, *Al-Maqaleh v. Gates*, No. 09-5265 (consolidated with 09-5266, 09-5267) (D.C. Cir. Jan. 7, 2010). Indeed, in granting Petitioners' Motion to Amend Petitions for Writ of Habeas Corpus, this Court recognized that "[t]he proffered evidence is extensive (and arguably evolving) and, in some ways, its impact under the *Boumediene/Maqaleh* factors is subtle . . . [and] better explored through full consideration of the evidence and the parties' positions." *Al-Maqaleh v. Gates*, No. 06-cv-1669 (JDB), 2011 U.S. Dist. LEXIS 14849, at *6 (D.D.C. Feb. 15, 2011). Petitioners ask only to submit newly available evidence strongly related to that already accepted by this Court.

Respondents absurdly claim that Petitioners seek to "unnecessarily prolong" this litigation by introducing supplemental materials. These materials only became available to Petitioners after the filing deadline for their Opposition to Respondents' Motion to Dismiss the Amended Petitions and Petitioners solely seek the limited relief of supplementing the record with that additional information.

In contrast to the momentous stakes involved for Petitioners, who remain imprisoned after nearly a decade, Respondents will suffer no prejudice from the addition of the supplemental materials into the record. Moreover, it bears emphasis that this round of briefing might have been avoided entirely had Respondents accepted Petitioners' invitation to oppose the supplemental materials within Respondents' Reply in Support of Their Motion to Dismiss. Respondents refused, and instead chose to oppose Petitioners' Motion to Supplement and to brief

the issue separately.  Pet'rs' Mot. for Leave to File Supplemental Materials at 2, *Al-Maqaleh v. Obama*, No. 06-cv-01669 (D.D.C. Aug., 3, 2011) (dkt. 67).  Respondents now attempt to cast the responsibility for any delay on Petitioners, as they simultaneously ask for permission to file yet another brief, which would prolong this litigation.  Resp'ts' Opp'n to Pet'rs' Mot. to File Supplemental Materials at 3, *Al-Maqaleh v. Panetta*, No. 06-cv-01669 (D.D.C. Aug, 12, 2011) (dkt. 68).

As this Court has recognized, "[t]he parties' filings reveal vastly different assessments of the additional evidence [proffered], and of the impact of that evidence." *Al-Maqaleh,* 2011 U.S. Dist. LEXIS 14849*,* at *3.  This Court cannot, therefore, simply credit Respondents' factual assertions in undertaking its jurisdictional analysis.  Instead, it must fully consider all the evidence, and reach its determination by weighing the factors set forth in *Boumediene*.

Contrary to  Respondents' baseless assertions, Petitioners have no interest in "barraging," "inflaming," or "disturbing" this Court.  Sadly, given the wide-range of detainee abuse which has been exposed over the past decade (photographic or otherwise), and the extent of this Court's prior experience in detainee habeas litigation, it is hard to imagine any new revelations of torture that would come as a shock to this Court.  Petitioners merely wish to include all available evidence in the record which this Court (and eventually the Court of Appeals under a *de novo* standard of review) will consider as part of the fact-specific jurisdictional inquiry.  Thus, even if this Court is not ultimately persuaded by the evidence, the materials nevertheless inform this Court's jurisdiction, consistent with *Boumediene*, and the interests of justice under Federal Rule of Civil Procedure 15(d) favor their entry into this record.

## I. Petitioners' Supplemental Materials Bear Directly on this Court's Jurisdiction

### *The Department of Defense's Criteria for Petitioners' Status Designations*

Respondents insist that the criteria for designation as an Enduring Security Threat ("EST") have "no bearing on the jurisdictional question because . . . DoD's threat assessment is irrelevant to the 'status of the detainee' prong of the *Boumediene* analysis." Resp'ts' Opp'n to Pet'rs' Mot. to File Supplemental Materials at 8. Tellingly, however, Respondents do not cite to *Boumediene* or any other authority to support this proposition. Respondents rely only on their own declarant to bolster their legal argument on this point. Resp'ts' Opp'n at 8-9.

In relying on the declaration of Mr. Lietzau, Respondents stress that the "EST analysis is separate and distinct from the determination that a detainee is properly held under the AUMF, and thus, Petitioners' proposed submission [about the EST criteria] is irrelevant to the jurisdictional analysis here." Resp'ts' Opp'n at 9. While it may be that the Detainee Review Boards ("DRBs") assess threat level only after determining detainability, the EST designation nonetheless forms an integral part of Petitioners' status determination for the purposes of *Boumediene*. To be sure, it significantly impacts the prospects of a prisoner's release or transfer from U.S. custody. *See, e.g.,* Pet'rs' Mot. for Leave to File Supplemental Materials at 4.

Further, under *Boumediene*, contested status militates in favor of habeas jurisdiction. *See Boumediene*, 553 U.S. at 766-67 (distinguishing *Eisentrager* petitioners, who did not contest their status as "enemy aliens"). Here, Petitioners dispute both their internability *and* their designation as ESTs. The fact that Respondents have made one set of status determinations governing internability and another set of status determinations governing release and transfer is itself evidence of the arbitrary nature of the DRBs, whose procedural inadequacy tilts in favor of

habeas jurisdiction here.  *See,e.g,* Pet'rs' Reply in Further Supp. of Their Joint Mot. to Amend at 17-18, *Al-Maqaleh v. Gates*, No. 06-cv-1669 (D.D.C. Nov. 12, 2010) (dkt. 54).

Respondents describe the transfer of ESTs as necessarily discretionary and allude to the "higher level of approval" needed for such transfers. *See* Resp'ts' Opp'n at 8.  At the very least, this higher approval would presumably complicate and delay the transfer of an EST, substantially and unpredictably.  Because the EST designation entrenches and indefinitely prolongs Respondents' exclusive control over Petitioners, the criteria and procedures governing the EST designation necessarily bear on this Court's jurisdiction to hear Petitioners' challenges. For as long as Petitioners are under exclusive U.S. control, they cannot invoke the laws of any other nation to challenge their imprisonment.

If this Court is inclined to grant Respondents' Motion to Dismiss, it should allow Petitioners to confirm additional facts, including the EST criteria, that are within Respondents' exclusive knowledge and weigh in favor of habeas jurisdiction under *Boumediene*. *See, e.g.,* Pet'rs' Opp'n to Resp'ts' Mot. to Dismiss at 35, *Al-Maqaleh v. Obama*, No. 06-cv-1669 (D.D.C. June 23, 2011) (dkt. 65).  Even accepting Respondents' contention that the document produced to the ACLU was a "blank form," *see* Resp'ts' Opp'n at 3, and even assuming that the EST criteria are properly classified, this Court could still order production of the unredacted document to undersigned security-cleared counsel under classified seal, as it has done in the past.  *See Al-Bakri v. Obama*, 660 F. Supp. 2d 1, 2 (D.D.C. 2009) (granting security-cleared counsel access to government's ex parte, classified filing).

### *The Declaration of Next-Friend Petitioner Ahmad Ali al-Maqaleh*

Mr. al-Maqaleh's declaration is jurisdictionally relevant in two ways: it establishes that

5

Mr. al-Maqaleh was told by his son about (1) the DRB determination clearing his son for release and (2) his son's distrust of the personal representative assigned to him by his jailors and his related desire for access to undersigned counsel. Petitioners will address Respondents' objections to each portion of the declaration in turn.

In disputing the jurisdictional relevance of Petitioner al-Maqaleh's clearance determination from the DRB, Respondents cite a number of Guantánamo habeas decisions indicating that clearance for transfer is not relevant to the merits question of detention legality. *See* Resp'ts' Opp'n at 6. Those cases are inapposite. The jurisdictional analysis under *Boumediene* is distinct from the merits question as to the legality of a petitioner's imprisonment. Under *Boumediene*, habeas jurisdiction depends, in part, on contested status. *See Boumediene*, 553 U.S. at 766-67 (distinguishing petitioners in *Eisentrager*, who did not contest their status as "enemy aliens"). While the petitioners in *Eisentrager* did not contest their status, the petitioners in *Boumediene* certainly did, and so do Petitioners here.

Respondents urge this Court not to concern itself with any DRB decisions clearing these Petitioners for release, because such determinations are "entirely committed to the discretion of the Executive and necessarily involve[] complex diplomatic, political, and national security determinations." Resp'ts' Opp'n at 7. Of course, the same can be said of the entire DRB process and any other mechanism through which Respondents decide Petitioners' continued imprisonment without charge—that it is purely discretionary, arbitrary even—hence Petitioners' call for judicial review. Respondents refer to the security situation in Yemen as an example but offer no evidence to establish how that situation has impeded Respondents' efforts in seeking Mr. al-Maqaleh's repatriation or resettlement, or Mr. al-Bakri's, for that matter. Indeed, Respondents have offered no evidence to indicate that any affirmative measures have ever been

6

taken to effectuate these Petitioners' release.  Petitioners, by contrast, have offered evidence establishing that they have each, in turn, been deemed ESTs in one DRB cycle, deemed cleared for release in a later DRB cycle, and then have been subjected, again, to subsequent DRBs.  *See, e.g.,* Second Am. Pet. at 33, *Al-Maqaleh v. Gates*, No. 06-cv-1669 (D.D.C. Apr. 4, 2011) (dkt. 63); Decl. of Ramzi Kassem at ¶6-9, *Al-Maqaleh v. Obama*, No. 06-cv-1669 (D.D.C. June 24, 2011) (dkt. 65-2).  In the absence of contrary evidence from Respondents, it is a fair inference here that the DRBs operate arbitrarily.

This Court should also consider Petitioner al-Maqaleh's distrust of his personal representative and his desire for access to undersigned counsel because both underscore the procedural inadequacy of the DRBs.  Contrary to Respondents' contention, there is nothing "far fetched" about how lack of access to counsel exacerbates the inadequacy of the DRBs for non-Afghan prisoners like Mr. al-Maqaleh.  In recognizing the adequacy of the procedures afforded to the *Eisentrager* petitioners, the *Boumediene* court noted that "they were entitled to representation by counsel." *Boumediene* 553 U.S. at 767.  Under the deficient CSRTs, by contrast, the Supreme Court found that "[although the detainee is assigned a 'Personal Representative' to assist him during CSRT proceedings, [it is] clear that person is not the detainee's lawyer." *Id*.  Here, exactly the same is true: the various personal representatives assigned to Petitioners over their many DRB proceedings were not lawyers.  *See, e.g.,* Pet'rs' Reply in Further Supp. of Their Joint Mot. to Am. at 17-18.

### *Construction of New U.S. Detention Facilities in Afghanistan*

Although this Court previously found that evidence of general-purpose construction at Bagram was not relevant to the site of detention factor from *Boumediene*, the new evidence that Petitioners are offering differs materially from what this Court or the Court of Appeals had

previously considered.  This new evidence pertains specifically to U.S.-government controlled detention facilities and detainee housing, and it bolsters evidence already accepted by this Court through Petitioners' amended petitions.  Taken together, this evidence collectively indicates that Petitioners and other non-Afghans at Bagram will continue to remain in indefinite and exclusive U.S. custody—irrespective of the uncertain transfer of some facilities to Afghan control.  *See* Pet'rs' Mot. for Leave to File Supplemental Materials at 5; Pet'rs' Opp'n to Resp'ts' Mot. to Dismiss at 24-26.

### *New Evidence of the C.I.A.'s Rendition and "Ghosting" Program*

Petitioners' amended habeas petitions relay the known circumstances surrounding U.S. agents' seizures of Petitioners many years ago.  The new materials offered here by Petitioners about the C.I.A.'s secret rendition and "ghosting" program simply bolster those accounts and impact the jurisdictional analysis in two ways.  First, the materials help contextualize why the U.S. government would seek to evade judicial review of Petitioners' imprisonment.  *See* Pet'rs' Opp. at 28-33.  Also, the materials raise the considerable likelihood that evidence relied upon by the DRBs was obtained under torture and coercive interrogation routinely practiced by the U.S. government or its partners in the rendition program at the time Petitioners here were forcibly taken into U.S. custody.

### II. The Interests of Justice under Rule 15(d) Warrant Inclusion of Petitioners' Supplemental Materials within this Record

Respondents maintain that Federal Rule of Civil Procedure 15(d) does not permit Petitioners' Motion to Supplement because the motion was not made in support of a "pleading."  Their contention is disingenuous seeing as Respondents themselves have taken liberties with the rules, to include declarations submitted in conjunction with their Motion to Dismiss that they ask this Court to treat as facts that Respondents have "pled."  It appears as though Respondents'

recurrent claim that the federal rules do not apply to these proceedings, *see, e.g.,* Resp'ts' Opp'n at 3 n.1, actually means that the rules do not apply unless Respondents wish to assert them to self-serving ends. In any event, owing to the rules' indeterminate applicability in this context and Respondents' approach thus far in the litigation, Petitioners' request to supplement the record is appropriate and Rule 15 provides relevant guidance.[1]

## CONCLUSION

Accordingly, Petitioners respectfully request that this Court grant Petitioners' motion for leave to file the Supplemental Declaration of Tina M. Foster along with the supplemental materials attached thereto, in further support of Petitioners' Opposition.

Dated: September 5, 2011

Respectfully submitted,

\_\_\_\_/s/_____  
Ramzi Kassem  
*Supervising Attorney*  
Kyle Carraro  
Gabriela Lopez  
*Law Student Interns*  
**Main Street Legal Services, Inc.**  
**City University of New York**  
**School of Law**  
65-21 Main Street  
Flushing, NY 11367  
(718) 340-4558  

Hope R. Metcalf  
**Lowenstein Int'l Human Rights Clinic**  
**Yale Law School**  
127 Wall Street  
New Haven, CT 06511  
(203) 432-0138  

*Lead Counsel for Petitioner Amin al-Bakri*

\_\_\_\_/s/_____  
Tina M. Foster  
Golnaz Fakhimi\*  
**International Justice Network**  
P.O. Box 610119  
New York, NY 11361  
(718) 717-8467  

\**not yet admitted*

*Counsel for Petitioners Fadi al-Maqaleh,*  
*Redha al-Najar, and Amin al-Bakri*

---

[1] Of course, should the Court so wish, Petitioners can retitle their motion to supplement as being in further support of Petitioners' Amended Petitions for Writ of Habeas Corpus, or the Court could treat the motion as such.