IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FADI AL-MAQALEH, *et al.*, | ) | |
| | ) | |
|     Petitioners, | ) | |
|   v. | ) | Civil Action No. 1:06-CV-01669 (JDB) |
| | ) | |
| LEON E. PANETTA, *et al.*, | ) | |
| | ) | |
|     Respondents. | ) | |
| | ) | |
| AMIN AL-BAKRI, *et al.*, | ) | |
| | ) | |
|     Petitioners, | ) | |
|   v. | ) | Civil Action No. 1:08-CV-01307 (JDB) |
| | ) | |
| BARACK OBAMA, *et al.*, | ) | |
| | ) | |
|     Respondents. | ) | |
| | ) | |
| REDHA AL-NAJAR, *et al.*, | ) | |
| | ) | |
|     Petitioners, | ) | |
|   v. | ) | Civil Action No. 1:08-CV-02143 (JDB) |
| | ) | |
| LEON E. PANETTA, *et al.*, | ) | |
| | ) | |
|     Respondents. | ) | |
| | ) | |

**RESPONDENTS' RESPONSE TO PETITIONERS'
SUPPLEMENTAL MATERIALS IN SUPPORT
OF PETITIONERS' OPPOSITION TO MOTION TO DISMISS**

Pursuant to this Court's Order of October 13, 2011, Respondents hereby respond to Petitioners' supplemental materials filed in support of their opposition to Respondents' motion to dismiss (ECF No. 71).  The supplemental materials are irrelevant to the jurisdictional question of whether habeas jurisdiction extends to Bagram.  Much like the allegedly "newly discovered evidence" in Petitioners' amended habeas petitions, the new materials present nothing new and are merely part of a continuum of the latest media reporting of the United States' detention policy since the war began.  Respondents will address the different categories of supplemental materials below.

## ARGUMENT

### THE SUPPLEMENTAL MATERIALS DO NOT CHANGE THE COURT OF APPEALS' CONSTITUTIONAL ANALYSIS THAT HABEAS JURISDICTION DOES NOT EXTEND TO BAGRAM

#### I.  Declaration of Petitioner al-Maqaleh's Father

Petitioners have submitted the declaration of Petitioner al-Maqaleh's father, who asserted that al-Maqaleh informed him in a telephone call that he had been cleared for release by the Detainee Review Board ("DRB").  *See* Foster Supp. Decl., Attach., 1, ¶ 14.  But a DRB recommendation to transfer or release a detainee is not relevant to the jurisdictional analysis here.  Contrary to Petitioners' suggestion, such a recommendation does not go to the "status of the detainee" prong of the multi-factor test articulated in *Boumediene v. Bush*, 553 U.S. 723, 727 (2008).  That factor, as relevant here, concerns whether the detainee has been determined by the military to be lawfully detained under the Authorization for Use of Military Force ("AUMF"), Pub. L. 107-40, 115 Stat. 224 (2001), as informed by the laws of war.  And as Respondents have previously shown, *see* Mot. to Dismiss (ECF No. 64) at 24; Reply (ECF No. 66) at 9-12, the Court of Appeals has repeatedly held that "whether a detainee has been cleared

for release is irrelevant to whether a petitioner may be detained lawfully." *Almerfedi v. Obama*, No. 10-5291, 2011 WL 2277607 at *8 n.3 (D.C. Cir. June 10, 2011); *accord Awad v. Obama*, 608 F.3d 1, 11 (D.C. Cir. 2010); *Al-Bihani v. Obama*, 590 F.3d 866, 874 (D.C. Cir. 2010). A discretionary release or transfer recommendation for a detainee meeting the criteria for internment merely reflects the separate assessment that the threat posed by the detainee may be mitigated by means other than continued detention by U.S. forces. It says nothing about the military's determination that an individual meets the criteria for internment under the AUMF, as is the case with al-Maqaleh. *See* Harward Decl. (ECF No. 64), ¶ 15.

The declaration of al-Maqaleh's father is also offered to show that there allegedly is confusion among the Bagram detainees regarding whether they are entitled to have counsel visit them at Bagram. This information purportedly shows that Bagram detainees are less likely to trust the personal representatives assigned to assist them in their DRB proceedings. Even if true, however, it is unclear how this would materially affect the jurisdictional analysis. The detainees are free to ask their personal representatives for clarification. Indeed, the personal representatives are presumed to discharge their duties in good faith. *See United States v. Morgan,* 313 U.S. 409, 421 (1941); *CTIA-The Wireless Ass'n v. FCC*, 530 F.3d 984, 989 (D.C. Cir. 2008) ("we have long presumed that executive agency officials will discharge their duties in good faith"). Moreover, even if a detainee continues to distrust the personal representative as Petitioners claim, it does not follow that the DRB process is rendered so unreliable and deficient such that it tips the constitutional scale in favor of extending the writ to Bagram.

  II.  **DoD's Criteria For Determining "Enduring Security Threats"**

Petitioners also submit an ACLU press release about its FOIA litigation in *ACLU v. Dep't of Defense*, No. 09-CV-8071 (BSJ)(S.D.N.Y). *See* Foster Supp. Decl. ¶¶ 4-5 and Attach.

2. In that case, the government mistakenly released to the ACLU two copies of a blank form classified at the SECRET level that lists criteria used by the DRB to determine whether to categorize a detainee as an "Enduring Security Threat" ("EST"). The parties in that case are currently litigating whether the document is properly classified and should, therefore, be returned to the government. Neither that litigation, nor the specific criteria for assessing ESTs, is relevant here. Specifically, the EST criteria merely go to DoD's threat assessment of a detainee and are irrelevant to the "status of the detainee" prong of the *Boumediene* analysis. As the Deputy Assistant Secretary of Defense Lietzau makes clear in his declaration submitted in the ACLU FOIA litigation, a DRB is charged with "(a) determining whether the criteria are satisfied to subject an individual to detention by U.S. Armed Forces pursuant to the Authorization for Use of Military Force, as informed by law-of-war principles; and, if so, (b) making a disposition recommendation to the convening authority . . . ." *ACLU v. Dep't of Defense*, No. 09-CV-8071, ECF No. 57., Lietzau Decl., ¶ 9. As part of the second assessment – that of the detainee's threat level – DRBs consider "whether the detainee meets the criteria for classification as an Enduring Security Threat ("EST"), as that term is defined in policy guidance authored by the Deputy Secretary of Defense." *Id.* Categorization of a detainee as an EST does not have "implications related to the lawfulness of detention," but is simply "a means of identifying the highest-threat detainees for purposes of implementing the U.S.'s discretionary transfer and release determinations," because "the transfer or release of ESTs must be approved at a higher level than is required to approve the transfer or release of non-ESTs." *Id.* In sum, the EST analysis is separate and distinct from the determination that a detainee is properly held under the AUMF, and thus, is irrelevant to the jurisdictional analysis here.

### III.    Construction of Detention Facilities at Bagram

The supplemental materials include information about the military's current construction projects at Bagram, including the building of modular detention housing units, as discussed in an article on Wired.com.  *See* Foster Supp. Decl., ¶ 6 and Attach. 3.  There is no dispute that the United States will continue to construct detention facilities at Bagram as the need for additional capacity arises.[1]  As the Deputy Assistant Secretary of Defense Lietzau explained, to enable U.S. forces to continue to conduct detention operations on a limited basis during the ongoing surge in military operations in Afghanistan and pending the transfer of non-Afghan detainees to their home countries or to third countries, the military "is planning for new construction to provide additional detainee housing capacity adjacent to the [Detention Facility in Parwan]."  Lietzau Decl. ¶ 5, Mot. To Dismiss (ECF No. 64).  Likewise, there can be no dispute that the United States intends to transfer the detention facilities at Bagram to the Government of Afghanistan, *see id.,* and has no intention to continue detention operations at Bagram beyond the cessation of hostilities.  *Id.* ¶¶ 9-10.

The information about the construction of additional detention capacity has no relevance to the jurisdiction question here.  Indeed, Petitioners have already unsuccessfully argued, both before this Court and the Court of Appeals, that the military's construction activities at Bagram Airfield evidence the United States' plenary control over Bagram.  *See Maqaleh v. Gates*, 604 F. Supp. 2d 205, 225 (D.D.C. 2009).  The topic was part of the "extensive dialog [the Court of Appeals had during oral argument] with counsel for the petitioners in which [the Court]

---

[1] A pre-solicitation notice about the construction of detention and other facilities at Bagram may be found at https://www.fbo.gov/?s=opportunity&mode=form&id= 8823422cb26e9acd8a65722bec183b6d&tab=core&cview=0 (last accessed Oct. 19, 2011).

repeatedly sought some limiting principle that would distinguish Bagram from any other military installation" and that "counsel was able to produce no such distinction."  *Maqaleh*, 605 F.3d at 95; *see also* Oral Argument Tr. 39-40 (Jan. 7, 2010) (attached to Resp.' Reply, ECF No. 66) (Judge Edwards:  "we're trying to understand what, what factors, or what factorial analysis you would apply.  You certainly wouldn't say, first on my list is how expensive is the detention facility, right?").  Respondents have repeatedly affirmed, consistent with the public statements of former President Bush and President Obama, that the United States is fully committed to supporting Afghan sovereignty and territorial integrity and has no intention to continue detentions at Bagram beyond the cessation of hostilities.  Accordingly, the construction activities at Bagram do not provide any basis to conclude that the United States exercises *de facto* sovereignty over Bagram.

### IV.  Former CIA Agent's Book About A "High-Value Detainee" in CIA's Detention Program

Petitioners also include two news articles from Harper's Magazine about a former CIA agent's memoir, entitled *The Interrogator: An Education*, about his interrogation of a "high-value detainee" during the early days of the CIA's counterterrorism effort immediately following the 9/11 attacks.  *See* Foster Supp. Decl. ¶¶ 7-9 and Attach. 4-6.  Although the book, an excerpt of which is also included in Petitioners' submission, does not identify the "high-value detainee," the reporter, based in part on interviews with Petitioners' counsel, speculates that it was Haji Pacha Wazir.  According to Petitioners, this is the same former Bagram detainee whose habeas petition was dismissed by this Court for lack of jurisdiction and whose subsequent appeal was mooted by his release.  *See* Foster Supp. Decl., Attach. 6 at 1-2.  The alleged connection between *The Interrogator* and the jurisdictional question here is that because the book shows that "Mr. Wazir was an innocent man who was unjustly kept in prison [for] eight years," the book

"highlight[s] the unreliability of the Executive's status and detention processes and determinations as well as the consequent necessity of meaningful judicial review." Petrs' Mot. to Supp., ECF No. 67 at 6.

Neither the CIA's counterterrorism effort nor Mr. Wazir's alleged "innocence," however, casts doubt on the reliability of the detainee review process at Bagram. Each of the three Petitioners alleges that he was in CIA detention before being transferred to Bagram in 2003 or 2004. DoD began implementing the DRB procedures in late 2009, and each Petitioner's status has been reviewed by the DRB on multiple occasions since then. *See* Harward Decl. ¶¶ 15, 18, 21. The DRB procedures are the relevant procedures for purposes of assessing the adequacy of process prong of the *Boumediene* multi-factor test, and Respondents have already fully demonstrated in their motion to dismiss that the adequacy of process factor does not tip the constitutional scale in favor of extending the writ to Bagram.

### V.   News Article About A Detainee Death at Abu Ghraib, Iraq

Also irrelevant to the jurisdictional question is the July 13, 2011 news article submitted by Petitioners about a detainee who allegedly was brought to Abu Ghraib, Iraq by the CIA in November 2003 as part of "a ghosting" program not sanctioned by the CIA and who died allegedly shortly after his interrogation by the CIA. *See* Foster Supp. Decl. ¶ 10, and Attach. 7. The alleged connection to this case is that Petitioner al-Maqaleh alleges that he, too, was at Abu Ghraib, purportedly after having been captured outside Afghanistan and held in CIA detention and prior to being transferred to Bagram around 2004. *Al-Maqaleh* 2d Am. Pet. ¶¶ 12-14; *see also* Foster Supp. Decl., Attach. 1 (al-Maqaleh's father averred that he first heard from al-Maqaleh in 2004 through the International Committee of Red Cross). But even if al-Maqaleh had been held at Abu Ghraib, which Respondents do not confirm or deny in this unclassified

filing, the news article about a detainee death at Abu Ghraib is wholly irrelevant to the jurisdictional question.  If Petitioners' attempt is to provoke outrage about the injustice they contend was done to that detainee in Iraq, as the article includes a highly inflammatory and disturbing photograph, this is not the proper forum.[2]

## CONCLUSION

For the foregoing reasons and reasons stated in Respondents' motion to dismiss and reply in support of the motion to dismiss, this Court should dismiss the amended habeas petitions for lack of subject matter jurisdiction.

Dated: October 25, 2011                                                          Respectfully submitted,

TONY WEST
Assistant Attorney General

JOHN R. TYLER
Assistant Branch Director

/s/ *Jean Lin*
JEAN LIN
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC 20530
Tel: (202) 514-3716
Attorneys for Respondents

---

[2] Petitioners also submit the government's guidance to habeas counsel in the Guantanamo habeas litigation regarding the handling of Wikileaks information.  The Wikileaks guidance is irrelevant to the jurisdictional question here, and Petitioners do not suggest otherwise.  Accordingly, Respondents will not address it here.